UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| **ROYAL HAMPTON and JAMES PIERCE**, individually and on behalf of all similarly situated individuals, | Case No. |
| Plaintiffs, | Judge: |
| v. | **JURY TRIAL DEMANDED** |
| **MAXWELL TRAILERS & PICK-UP ACCESSORIES**, **INC.** and **IRONSTAR BEDS LLC** | |
| Defendants. | |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiffs Royal Hampton and James Pierce ("Plaintiffs"), individually and on behalf of all similarly situated individuals, by and through the undersigned attorneys, bring this Complaint against Defendants Maxwell Trailers & Pick-Up Accessories, Inc. ("Maxwell Trailers") and Ironstar Beds LLC ("Ironstar") (collectively "Defendants"), and state as follows:

**INTRODUCTION**

1. This is a class and collective action brought by Plaintiffs on their own behalf and on behalf of all similarly situated current and former employees of Defendants to recover for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500 *et seq*.

2. Maxwell Trailers is a corporation founded in 1994 for the purposes of manufacturing, selling, and distributing trailers, automobiles, trucks, wagons, and other mechanically propelled vehicles. It supplies and services a variety of trailers and trailer

1

accessories from its two locations in the State of Missouri. Those locations are in Mexico, Missouri and Columbia, Missouri.

3. Ironstar is a corporation founded in 2007 for the purpose of, *inter alia*, manufacturing steel products and selling these products to truck equipment dealers and distributors. Ironstar's production services are based in Mexico, Missouri.

4. On information and belief, at all relevant times, Maxwell Trailers and Ironstar have been related to each other through common ownership and management.

5. At all relevant times, Plaintiffs and similarly situated employees have been employed by Maxwell Trailers and/or Ironstar.

6. To provide products and services to their customers, Defendants employ dozens of non-exempt, hourly-paid workers, including Plaintiffs.

7. Instead of paying Plaintiffs and other similarly situated employees appropriate overtime compensation, Defendants implemented a policy or practice of failing to pay their hourly employees overtime at the rate of one and one-half times their regular rate of pay for all hours worked over 40 in a workweek, instead, paying them at their straight-time rate (without any overtime premium) for hours over 40, in violation of the FLSA and MMWL. Plaintiffs, on behalf of themselves and all similarly situated employees, assert claims for overtime compensation under the FLSA and MMWL.

8. In addition, Plaintiff Hampton asserts claims for retaliation under the FLSA on behalf of himself and other similarly situated employees who had their hours cut in response to Plaintiff Hampton's attempts to organize his coworkers to bring this lawsuit. These claims are predicated on Defendants' retaliatory cutting of Plaintiff Hampton's hours – and subsequently the other employees' hours – when they learned that Plaintiff Hampton intended to file this

lawsuit to assert his rights under the FLSA and MMWL and was communicating with his coworkers regarding joining collectively to assert their legally protected rights. It is also predicated on Defendants ultimately terminating Plaintiff Hampton's employment in retaliation for his efforts to organize his coworkers to bring this lawsuit.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this action involves a federal question under the FLSA.

10. This Court has original subject matter jurisdiction over the MMWL claims pursuant to 29 U.S.C. § 1367 and Mo. Rev. Stat. § 290.527 because the MMWL claims are so related to the FLSA claims that they form a part of the same case or controversy.

11. This Court has personal jurisdiction over Defendants because Defendants do business within the State of Missouri.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

13. Plaintiffs reside in this District.

14. Defendants conduct business in this district, employ individuals to work in this district, and Plaintiffs worked for them in this District during the time period relevant to the Complaint.

## PARTIES

15. At all times relevant to the Complaint, Plaintiffs were hourly-paid, non-exempt employees of Defendants, working at their location in Mexico, Missouri.

16. Plaintiffs' written consents to join this action are attached hereto as <u>Exhibit 1</u> and <u>Exhibit 2</u>.

17. Plaintiff Hampton was hired as a welder in or around August 2014. His employment was terminated on or around October 2, 2018.

18. Plaintiff Pierce was hired as a welder in or around June 2017. His employment with Defendants ended in or around November 2017.

19. Plaintiffs bring this action on behalf of themselves and other similarly situated employees who: (1) were not paid one and one-half times their regular rate of pay for all hours worked over 40 in a workweek, and (2) had their hours cut in response to Plaintiff Hampton's efforts to organize his coworkers collectively to bring this lawsuit. Plaintiff Hampton also brings individual retaliation claims on his own behalf based on his retaliatory termination.

20. The class of similarly situated employees sought to be certified as a collective action under the FLSA for the overtime claim (Count I) is defined as:

> **All current and former hourly-paid, non-exempt workers (including but not limited to welders, finishers, painters, fabricators, laborers, and office workers) employed by Maxwell Trailers & Pick-Up Accessories, Inc. and/or Ironstar Beds LLC at any time from three years before the date of filing of the complaint through the date of judgment ("FLSA Overtime Collective").**

21. The class of similarly situated employees sought to be certified as a collective action under the FLSA for the retaliation claim (Count II) is defined as:

> **All current and former hourly-paid, non-exempt workers (including but not limited to welders, finishers, painters, fabricators, laborers, and office workers) employed by Maxwell Trailers & Pick-Up Accessories, Inc. and/or Ironstar Beds LLC at any time from three years before the date of filing of the complaint through the date of judgment who had their hours reduced to 40 in response to Plaintiff Hampton's efforts to organize his coworkers to file a lawsuit ("FLSA Retaliation Collective").**

22. Plaintiffs seek conditional and final certification of the FLSA Overtime Collective and FLSA Retaliation Collective under 29 U.S.C. § 216(b).

23. Plaintiffs also seek certification of a class under Federal Rule of Civil Procedure 23 to remedy Defendants' violations of the MMWL.

24. The class of similarly situated employees sought to be certified under the MMWL for the overtime claim (Count III) is defined as:

> **All current and former hourly-paid, non-exempt workers (including but not limited to welders, finishers, painters, fabricators, laborers, and office workers) employed by Maxwell Trailers & Pick-Up Accessories, Inc. and/or Ironstar Beds LLC in the state of Missouri at any time from two years before the date of filing of the complaint through the date of judgment ("MMWL Overtime Class").**

25. Maxwell Trailers is a Missouri corporation doing business within the state of Missouri and maintains its headquarters in Mexico, Missouri.

26. Ironstar is a Missouri corporation doing business within the state of Missouri and maintains its headquarters in Mexico, Missouri.

27. Both Maxwell Trailers and Ironstar are owned and operated by Randy Maxwell.

28. Both Maxwell Trailers and Ironstar operate out of the same facilities in Mexico, Missouri and Columbia, Missouri.

## COVERAGE UNDER THE FLSA AND MMWL

29. At all times relevant to the Complaint, Defendants were and are employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all times relevant to the Complaint, Defendants were and are employers within the meaning of Mo. Rev. Stat. § 290.500(4).

31. At all times relevant to the Complaint, Plaintiffs were and/or are employees within the meaning of Mo. Rev. Stat. § 290.500(3).

32. At all times relevant to the Complaint, Defendants were and are enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

33. At all times relevant to the Complaint, Defendants were and are enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s)(1).

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

34. Maxwell Trailers manufactures, sells, distributes, and services a variety of trailers and truck beds.  It also offers other products including landscaping stone, buildings (including sheds, carports, and lean-tos), and other accessories.  On information and belief, Maxwell Trailers employs over 50 workers, including laborers, welders, painters, finishers, fabricators, and office workers, at its two Missouri locations, who provide the labor necessary to manufacture and service its products, as well as run its business.

35. Ironstar manufactures steel products and sells these products to truck equipment dealers and distributors.  On information and belief, Ironstar employs over 50 workers, including laborers, welders, painters, finishers, fabricators, and office workers, in Missouri, who provide the labor necessary to manufacture and service its products, as well as run its business.

36. Throughout Plaintiffs' employment, they have worked for Defendants as hourly-paid, non-exempt welders at their Mexico, Missouri location.

37. At all relevant times, Plaintiff Hampton has been paid $11.50 per hour.

38. Throughout his employment, Plaintiff Hampton has routinely worked over 40 hours per workweek.  He frequently worked over 55 hours per workweek until his hours were cut to 40 in retaliation for his efforts to organize his coworkers to bring this lawsuit.

39. At all relevant times, Plaintiff Pierce was paid $9.00 per hour.

40. Throughout his employment, Plaintiff Pierce routinely worked over 40 hours per workweek.  He frequently worked over 70 hours per workweek.

41. Other similarly situated employees also have routinely worked over 40 hours per workweek during the relevant time period, although some of them suffered a reduction in their hours when their hours were cut in retaliation for Plaintiff Hampton's efforts to organize his coworkers to bring this lawsuit.

42. Plaintiffs and other similarly situated employees must clock in using Defendants' punch card timeclock when they arrive at work. They clock out at the beginning of their meal break and clock back in at the end of their meal break. They then clock out before leaving work for the day.

43. Defendants use this timeclock to track the hours worked by Plaintiffs and other similarly situated employees, who are required to record their hours worked at the time clock. Plaintiffs and other similarly situated employees are paid for their hours worked reflected in Defendants' records, created by the timeclock, at their straight-time rate of pay. That is, they are paid their same straight-time rate of pay for hours reflected in Defendants' records, whether those hours are under or over 40 in a workweek. Plaintiffs and other similarly situated employees do not receive any overtime premium for hours worked over 40 in a workweek.

44. When Plaintiffs and other similarly situated employees work over 40 hours in a workweek, they are entitled to be compensated for their hours worked over 40 in a workweek at the rate of at least one and one-half times their regular rate of pay.

45. In violation of the FLSA and MMWL, at all relevant times, Defendants have failed to pay Plaintiffs and other similarly situated employees any overtime premium.

46. Since Plaintiff Hampton is compensated at the straight-time rate of $11.50 per hour, and Plaintiff Pierce was compensated at the straight-time rate of $9.00 per hour, they are or were entitled to payment for all hours worked over 40 in a workweek at rates of at least $17.25

and $13.50 per hour, respectively. However, they were paid for hours over 40 at the rates of $11.50 and $9.00 per hour, respectively, in violation of the FLSA and MMWL.

47. All similarly situated employees were subject to the same illegal policy or practice in that they were not paid for their hours worked over 40 at the rate of at least one and one-half times their regular rate of pay.

48. Defendants willfully violated the FLSA and MMWL by failing to pay Plaintiffs and other similarly situated employees an overtime premium for hours worked over 40 in a workweek.

49. Defendants were aware or should have been aware of the overtime requirements of the FLSA and MMWL.

50. Defendants nonetheless suffered or permitted Plaintiffs and other similarly situated employees to work without receiving the overtime pay to which they were entitled.

51. Defendants knew that they were not paying Plaintiffs and other similarly situated employees the overtime pay to which they were entitled.

52. Defendants knew, or acted with reckless disregard for whether, Plaintiffs and other similarly situated employees worked more than 40 hours in individual workweeks without receiving overtime compensation at the rate of one and one-half times their regular rate of pay for hours worked over 40 in a workweek.

53. Defendants' failure to pay the appropriate overtime compensation to Plaintiffs and other similarly situated employees was, and is, a willful violation of the FLSA and MMWL.

**FACTUAL ALLEGATIONS FOR RETALIATION CLAIMS**

54. In or around the middle of July 2018, Plaintiff Hampton began speaking with his co-workers, asking them if they would be interested in joining collectively to assert their

statutory right to overtime pay. Many of Plaintiff Hampton's co-workers expressed to Plaintiff Hampton that they were interested in pursuing a lawsuit.

55. After Plaintiff Hampton began these conversations with his co-workers, on information and belief, it became known to Randy Maxwell, Defendants' owner, that Plaintiff Hampton intended to assert his rights to overtime under the FLSA and MMWL and that Plaintiff Hampton was speaking with his co-workers so that they could assert their rights collectively as well.

56. Once Randy Maxwell learned that Plaintiff Hampton was asserting his FLSA and MMWL rights and encouraging coworkers to do the same, Plaintiff Hampton was retaliated against. Ultimately his coworkers were also retaliated against based on Plaintiff Hampton's own protected activity and their willingness to participate and interest in this lawsuit.

57. Specifically, in or around early August 2018, Randy Maxwell told Plaintiff Hampton that he needed to "squash" the anticipated lawsuit and "make sure nothing happened." Defendants further communicated to Plaintiff Hampton—through their Plant Manager, Bruce—that until there was proof that Plaintiff Hampton would not pursue his claims, Plaintiff Hampton would be limited to working 40 hours per week.

58. Plaintiff Hampton's hours were, in fact, reduced to no more than 40 per week.

59. Throughout his employment, Plaintiff Hampton typically worked in excess of 40 hours every week. Although only paid at his straight-time rate for his hours over 40, in violation of the FLSA and MMWL, the compensation he received for his hours worked over 40 was still compensation that he relied on to support himself and his family and, thus, Plaintiff Hampton has been injured by having his hours reduced to 40 per week in retaliation for organizing his coworkers to collectively challenge Defendants' illegal practices.

60. After Plaintiff Hampton was informed that Defendants were cutting his hours because of the anticipated lawsuit, in or around late August or early September 2018, Defendants also told the other workers who worked in Plaintiff Hampton's building that they were no longer allowed to work past 40 hours in a week.

61. Then, in or around the middle of September 2018, Defendants further told Plaintiff Hampton's coworkers that no one in any of the buildings at the Mexico, Missouri location could work past 40 hours per week. On information and belief, Bruce told Plaintiff Hampton's coworkers that Defendants' cutting their hours was Plaintiff Hampton's "fault" because of the anticipated lawsuit.

62. This statement which was clearly intended to punish and intimidate Plaintiff Hampton for pursuing his legal right to overtime compensation, constituted further retaliation.

63. All similarly situated employees who had worked over 40 hours per week in the past and who had their hours cut in response to Plaintiff Hampton's efforts to organize them to collectively assert their legal claims, and their own support of and willingness to pursue their own claims, for overtime were damaged when Defendants cut their hours.

64. On or around October 1, 2018, Defendants' Plant Manager, Bruce, spoke with Plaintiff and told him, "Randy's not paying for overtime."

65. On or around October 1, 2018, Plaintiff Hampton had his home sprayed and fumigated by a pest control company. He was required to move many personal items out of his home for the work to take place.

66. On or around October 2, 2018, Plaintiff Hampton called Defendants' Plant Manager, Bruce, and informed him that he would be an hour to an hour and a half late for work because he had to move his personal belongings back into his home following the pest control

work that had been performed.  Bruce indicated to Plaintiff Hampton that this was fine.  Plaintiff Hampton arrived at work around 9:20 a.m., at which time he was informed by Bruce that Defendants were terminating his employment.  Plaintiff Hampton asked to speak with Randy Maxwell.  He explained to Randy Maxwell that he had called in and explained that he would be late because his home had been fumigated and he had to move his personal belongings back inside.  Randy Maxwell responded that he did not want to "deal with" Plaintiff Hampton any longer.

67.     Defendants terminated Plaintiff Hampton's employment because he planned to assert his legal rights to overtime through a lawsuit and because of his efforts to organize his co-workers and former co-workers to do the same.

68.     On information and belief, following Defendants' firing of Plaintiff Hampton, Defendants returned their current employees to the regular hours they had worked before the retaliation occurred.

## CLASS AND COLLECTIVE ALLEGATIONS

69.     Plaintiffs bring the claims under the FLSA (Counts I and II) as an "opt in" collective action pursuant to 29 U.S.C. § 216(b).

70.     Plaintiffs bring the Claims under the MMWL (Counts III) as a class action under Federal Rule of Civil Procedure 23.

71.     Defendants are liable under the FLSA to the FLSA Overtime Collective and under the MMWL to the MMWL Overtime Class for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated employees for all hours over 40 in a workweek at the rate of one and one-half times their regular rate of pay.

72. Defendants are liable under the FLSA to the FLSA Retaliation Collective for, *inter alia*, reducing the hours of Plaintiff Hampton and similarly situated employees as punishment for the employees trying to organize themselves to bring this lawsuit. They are also liable to Plaintiff Hampton for his retaliatory termination.

73. Numerous individuals were victimized by Defendants' policies or practices of failing to pay employees all overtime wages owed to them and retaliating by cutting hours.

74. Defendants had and have a consistently-applied policy or practice of failing to pay FLSA Overtime Collective and MMWL Overtime Class members an overtime premium for hours worked over 40 in a workweek.

75. Defendants had and have a consistently-applied policy or practice of retaliating against FLSA Retaliation Collective by cutting their hours in response to their attempts to assert their rights to overtime under the FLSA.

76. Based on their experience working for Defendants, Plaintiffs are aware that Defendants' illegal policy or practice of failing to pay appropriate overtime was imposed on FLSA Overtime Collective and MMWL Overtime Class members.

77. Based on his experience working for Defendants, Plaintiff Hampton is aware that Defendants' illegal policy or practice of retaliating based on asserting or attempting to assert overtime rights was imposed on FLSA Retaliation Collective members.

78. Defendants pay Plaintiffs and FLSA Overtime Collective and MMWL Overtime Class members in the same manner.

79. Plaintiffs' experience(s) are therefore typical of those of the collectives and classes they seek to represent.

80. Defendants' failure to pay Plaintiffs and other FLSA Overtime Collective and MMWL Overtime Class members the wages to which they were entitled results from a generally applicable, systemic policy or practice which is not dependent on the personal circumstances of FLSA Overtime Collective or MMWL Overtime Class members, but rather, was applied equally to *all* FLSA Overtime Collective and MMWL Overtime Class members.

81. Defendants' cutting of the hours of FLSA Retaliation Collective members based on their attempts to organize to bring a lawsuit asserting their protected rights results from a generally applicable, systemic policy or practice which is not dependent on the personal circumstances of FLSA Retaliation Collective or MMWL Retaliation Class members, but rather, was applied equally to *all* FLSA Overtime Collective and MMWL Overtime Class members.

82. Upon information and belief, Defendants employed over 50 FLSA Overtime Collective, MMWL Overtime Class, FLSA Retaliation Collective, and MMWL Retaliation Class members during the relevant time period.  The precise numbers and identities of other members of the collectives and classes are identifiable from the business records, tax records, and/or employee and personnel records maintained by Defendants.

83. Plaintiffs have no interests contrary to or in conflict with the members of the collectives and classes they seek to represent, nor does their counsel.

84. Like each member of the classes and collectives they seek to represent, Plaintiffs have an interest in obtaining the unpaid overtime wages owed under state and federal law, along with all other applicable relief.

85. A class and collective action such as this one is superior to other available means for fair and efficient adjudication of the lawsuit.

86. Absent a class and collective action, many members of the classes and collectives Plaintiffs seek to represent will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA and MMWL.

87. Even if some members of the classes and collectives Plaintiffs seek to represent could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

88. If individual actions were required to be brought by each member or the classes and collectives Plaintiffs seek to represent, it would necessarily result in a multiplicity of lawsuits and it would create hardship to class and collective members, Defendants, and the Court.

89. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the members of the classes and collectives Plaintiffs seek to represent and provide for judicial consistency.

90. The questions of law and fact common to each of the members of the classes and collectives Plaintiffs seek to represent predominate over any questions affecting solely the individual members.   Among the common questions of law and fact are:

   a. Whether Defendants required members of the classes and collectives Plaintiffs seek to represent to work more than 40 hours during individual workweeks;

   b. Whether Defendants failed to pay overtime at the rate of one and one-half times the regular rate of pay for all hours worked over 40 in a workweek to Plaintiffs and the classes and collectives they seek to represent;

   c. Whether Defendants cut the hours of Plaintiff Hampton and members the classes and collectives Plaintiffs seek to represent in response to their efforts to assert their rights to overtime;

   d. Whether Defendants' violations of the FLSA was willful; and

   e. Whether Defendant's decision to not pay Plaintiffs and members of the classes and collectives they seek to represent was not made in good faith.

91. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

92. Plaintiffs will fairly and adequately represent and protect the interests of members of the classes and collectives Plaintiffs seek to represent.

93. Plaintiffs have retained counsel who are qualified and experienced in the litigation of class and collective actions.

**COUNT I**
**FLSA – FAILURE TO PAY OVERTIME WAGES**
**(PLAINTIFFS AND FLSA OVERTIME COLLECTIVE)**

94. Plaintiffs re-allege and incorporate all previous paragraphs herein.

95. With limited exception not applicable here, the FLSA requires an employer to pay its non-exempt employees one and one-half times their regular rate of pay for all hours worked over 40 hours in a workweek.  29 U.S.C. § 207.

96. By failing to pay Plaintiffs and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked over 40 in a workweek, Defendants violated the FLSA.

97. Defendants did not act in good faith when they engaged in the above-mentioned conduct.

98. By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly violated the FLSA.

99. Because of Defendants' policy or practice, Plaintiffs and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated individuals, pray that this Honorable Court:

15

      a.      Certify this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

      b.      Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all FLSA Overtime Collective members that this litigation is pending and that they have the right to "opt in" to this litigation;

      c.      Declare that Defendants willfully violated the FLSA as set forth above;

      d.      Award Plaintiffs and similarly situated individuals actual damages for unpaid wages;

      e.      Award Plaintiffs and similarly situated individuals in the FLSA Collectives liquidated damages in an amount equal to the unpaid wages found due;

      f.      Enjoin Defendants from retaliating against the Plaintiffs and similarly situated individuals and award Plaintiffs and similarly situated individuals all other available actual, liquidated, compensatory, and punitive damages;

      g.      Award reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

      h.      Award pre- and post-judgment interest to Plaintiffs on these damages; and

      i.      Grant such further relief as this court deems appropriate

### COUNT II
### FLSA – RETALIATION
### (PLAINTIFF HAMPTON AND FLSA RETALIATION COLLECTIVE)

100.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

101.    This count sets forth a claim for declaratory relief, injunctive relief, and damages for Defendants' violations of the FLSA's anti-retaliation provisions.

102. Plaintiff Hampton engaged in protected activity when he made it known that he intended to assert his rights under the FLSA and when he began organizing his coworkers to collectively assert their rights under the FLSA.

103. In response to this protected activity, Defendants retaliated against Plaintiff Hampton by cutting his hours. They further retaliated against Plaintiff Hampton and his coworkers by cutting the hours of his coworkers and telling his coworkers it was Plaintiff Hampton's "fault" because of the lawsuit. Defendants also ultimately terminated Plaintiff Hampton's employment in retaliation for his activities relating to asserting the rights of himself and his co-workers.

104. Defendants' conduct in response to protected activity violated the FLSA's anti-retaliation provisions, 29 U.S.C. § 215(a)(3).

105. As a result of Defendants' unlawful and retaliatory conduct described herein, Plaintiff Hampton and similarly situated FLSA Retaliation Collective members suffered substantial damages.

106. As a result, Plaintiff Hampton and FLSA Retaliation Collective Members are entitled to recover damages that arose as a result of Defendants' actions, and any legal or equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3), pursuant to 29 U.S.C. U.S.C. § 216(b), including reinstating Plaintiff Hampton's regular working hours that were cut, as well as those of FLSA Retaliation Collective members. Plaintiff Hampton and the FLSA Retaliation Collective seek an order enjoining the Defendants from retaliating against the Plaintiffs, the Opt-In Plaintiffs, and putative FLSA Retaliation Collective members.

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated individuals, pray that this Honorable Court:

    a.    Certify this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

    b.    Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all FLSA Retaliation Collective members that this litigation is pending and that they have the right to "opt in" to this litigation;

    c.    Declare that Defendants willfully violated the FLSA as set forth above;

    d.    Award Plaintiffs and similarly situated individuals actual damages for unpaid wages;

    e.    Award Plaintiffs and similarly situated individuals in the FLSA Collectives liquidated damages in an amount equal to the unpaid wages found due;

    f.    Enjoin Defendants from retaliating against the Plaintiffs and similarly situated individuals and award Plaintiffs and similarly situated individuals all other available actual, liquidated, compensatory, and punitive damages;

    g.    Reinstate Plaintiff Hampton's employment;

    h.    Award reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

    i.    Award pre- and post-judgment interest to Plaintiffs on these damages; and

    j.    Grant such further relief as this court deems appropriate

### COUNT III
### MMWL – FAILURE TO PAY OVERTIME WAGES
### (PLAINTIFFS AND MMWL OVERTIME CLASS)

107.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

108. With limited exception not applicable here, the MMWL requires an employer to pay its non-exempt employees one and one-half times their regular rate of pay for all hours worked over 40 hours in a workweek.  Mo. Rev. Stat. § 290.505.

109. By failing to pay Plaintiffs and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked over 40 in a workweek, Defendants violated the MMWL.

110. Because of Defendants' policy or practice, Plaintiffs and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the MMWL.

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated individuals, pray that this Honorable Court:

    a. Certify this case as a class action in accordance with Fed. R. Civ. P. 23 with respect to the MMWL claims set forth above;

    b. Award Plaintiffs and similarly situated individuals actual damages for unpaid wages;

    c. Award Plaintiffs and similarly situated individuals in the MMWL Classes liquidated damages as set forth under the MMWL;

    d. Award reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

    e. Award pre- and post-judgment interest to Plaintiffs on these damages; and

    f. Grant such further relief as this court deems appropriate.

## **JURY DEMAND**

111. Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

/s/ *Anthony M. Pezzani*

Anthony Pezzani, #52900MO
**ENGELMEYER & PEZZANI, LLC**
13321 North Outer Forty Road, Suite 300
Chesterfield, MO 63017
Telephone: (636) 532-9933
Fax: (314) 863-7793
tony@epfirm.com

Laura E. Reasons
(to seek *pro hac vice* admission)
**DICELLO LEVITT & CASEY**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Fax: (312) 253-1443
lreasons@dlcfirm.com

Kenneth P. Abbarno
(to seek *pro hac vice* admission)
Mark M. Abramowitz
(to seek *pro hac vice* admission)
**DICELLO LEVITT & CASEY**
7556 Mentor Ave.
Mentor, Ohio 44060
Telephone: (440) 953-8888
Fax: (440) 953-9138
kabbarno@dlcfirm.com
mabramowitz@dlcfirm.com

*Counsel for Plaintiffs*