UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| ROYAL HAMPTON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 2:18CV110 HEA |
| | ) | |
| MAXWELL TRAILERS & PICK-UP ACCESSORIES, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Joint Motion to Dismiss Count II of Plaintiffs' Complaint, [Doc. No. 15], and Defendant Maxwell Trailers & Pick-Up Accessories, Inc.'s Motion to Dismiss, [Doc. No. 17]. Plaintiffs oppose both motions, which have been fully briefed. For the reasons set forth below, both motions are denied.

### **Facts and Background**

Plaintiffs Royal Hampton ("Hampton") and James Pierce ("Pierce") (collectively, "Plaintiffs") are welders who bring this action on behalf of themselves and a similarly situated class of plaintiffs against their employers. Plaintiffs allege that Defendants have violated the Fair Labor Standards Act, 29

U.S.C. § 216(b), *et seq.* ("FLSA") and the Missouri Minimum Wage Law, § 290.500 RSMo, *et seq.* ("MMWL").

According to the complaint, Defendant Maxwell Trailers & Pick-Up Accessories, Inc. ("Maxwell") is in the business of manufacturing, selling, and distributing trailers, automobiles, trucks, wagons, and other mechanically propelled vehicles. Defendant Ironstar Beds, LLC ("Ironstar") is in the business of, *inter alia*, manufacturing and selling steel products to truck equipment dealers and distributors. Maxwell and Ironstar (collectively, "Defendants") are related through common ownership and management. Defendants employ dozens of non-exempt, hourly-paid workers, including Plaintiffs. Plaintiffs and other similarly situated employees have been employed at all relevant times by Maxwell and/or Ironstar. Plaintiffs worked at Defendants' shared facility in Mexico, Missouri.

Plaintiffs and other similarly situated employees routinely worked in excess of 40 hours per week. Hampton regularly worked 55 hours per week, and Pierce regularly worked 70 hours per week. Plaintiffs and those similarly situated did not receive an overtime rate of pay for hours worked in excess of 40 hours per workweek. Instead, Defendants paid these employees their regular rate of pay for hours worked in excess of 40.

In July 2018, Hampton began asking his co-workers if they would be interested in joining collectively to assert their statutory right to overtime pay.

Many of Hampton's co-workers expressed interest in pursuing a lawsuit. Soon, the owner of Defendants, Randy Maxwell, learned of Hampton's intention to assert his rights to overtime pay with a lawsuit, and learned that Hampton was encouraging his coworkers to do the same.

In August 2018, Randy Maxwell told Hampton that he needed to "squash" the anticipated lawsuit and "make sure nothing happened." Defendants' plant manager told Hampton that until there was proof that he would not pursue his claims, Hampton would be limited to working 40 hours per week. Hampton's hours were then reduced to a maximum 40 hours per week. Hampton relied on the compensation he received from his regular schedule of 55 or more hours per week to support himself and his family.

In late August or early September 2018, Defendants informed the employees in Hampton's building that they were no longer allowed to work more than 40 hours per week. A few weeks later, Defendants informed their employees that no one at the Mexico location could work more than 40 hours per week. The plant manager reportedly told the employees that Defendants cut their hours at the "fault" of Hampton and his anticipated lawsuit.

On October 1, 2018, the plant manager told Hampton that "Randy's not paying for overtime." On October 2, Hampton informed the plant manager he would be late to work based on obligations at home. The plant manager said that

was fine, but when Hampton arrived to work, the plant manager told him that Defendants were terminating his employment. Hampton appealed to Randy Maxwell, who told Hampton that he did not want to "deal with" him any longer. Upon Hampton's termination, Defendants returned employees to schedules of more than 40 hours per week.

Plaintiffs allege three counts: Count I alleges that Defendants failed to pay overtime wages in violation of the FLSA; Count II alleges that Defendants violated the FLSA's non-retaliation provisions by reducing hours and terminating Hampton as a result of his impending lawsuit; and Count III alleges that Defendants failed to pay overtime wages in violation of the MMWL. Plaintiffs assert each count on behalf of themselves and similarly situated employees as collective (Counts I and II) and class (Count III) actions.

## Motion to Dismiss Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint states a plausible claim for relief if its 'factual content ... allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

When considering a 12(b)(6) motion, the district court accepts as true all factual allegations in the complaint and grants all reasonable inferences in favor of the nonmoving party. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

## Discussion

I.     Motion to Dismiss Count II

Count II of the Complaint alleges that Defendants violated the FLSA's anti-retaliation provision by cutting the hours of Hampton and his coworkers in response to Hampton's organizing a lawsuit for FLSA overtime violations. Hampton also alleges that he was retaliatorily terminated.

5

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation, a plaintiff must show that he participated in statutorily protected activity, that appellees took an adverse employment action against him, and that there was a causal connection between them. *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034–35 (8th Cir. 2005).

Defendants contend that Count II should be dismissed because: (i) Plaintiffs do not allege that they engaged in a protected activity; (ii) the claim is barred by Sections 7 and 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157-58; and (iii) Plaintiffs fail to plead that anyone other than Hampton suffered an adverse employment action. These arguments are not well taken.

(i) Protected activity

Defendants argue that because Hampton never actually filed a formal or informal complaint with Defendants or a government agency, he has not adequately pleaded that he engaged in a "protected activity."

For enforcement of its wage, hour, and overtime standards, the FLSA relies on "information and complaints received from employees seeking to vindicate

6

rights claimed to have been denied." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). The anti-retaliation provision is integral to the enforcement because it prevents fear of economic retaliation from inducing workers quietly to accept substandard conditions. *Id.*

To further the goals of the FLSA, courts have extended application of the anti-retaliation provision to conduct not expressly covered in the FLSA. *Saffels v. Rice*, 40 F.3d 1546, 1548 (8th Cir. 1994). In applying the FLSA's anti-retaliation provision to activity that falls outside the express wording of the statute, courts look to its "animating spirit." *Id.* at 1549 (internal quotations and citations excluded). For example, "[c]ourts have [ ] not hesitated to apply the protection of section 15(a)(3) to activities less directly connected to formal proceedings where retaliatory conduct has a [ ] chilling effect on employees' assertion of rights." *Id.* at 1548.

The FLSA also seeks to establish an enforcement system that is fair to employers. *Kasten*, 563 U.S. at 13. As such, employers are entitled to fair notice. *Id.* at 14. The "filed any complaint" language of the anti-retaliation provision "contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Id*. Put another

7

way, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.*

Hampton does not allege that he told Defendants or a government agency that he was organizing a lawsuit. Rather, the Complaint alleges the following: Hampton asked his coworkers to join him in filing a lawsuit against Defendants for FLSA overtime violations. When Randy Maxwell found out about Hampton's activities, he told Hampton to "squash" the lawsuit and "make sure nothing happened." The plant manager told Hampton that until there was proof that Hampton would not pursue his claims, Hampton's hours would be reduced. The hours of Hampton and his coworkers were then reduced; management told employees the reduction was Hampton's "fault." Hampton was then terminated.

Based on the facts alleged, Defendants had notice and understanding that Hampton was asserting his rights to overtime pay by organizing a lawsuit. Although Hampton did not complain directly to Defendants, the overtime complaint nevertheless reached Defendants, who responded with threatened and actual retaliation. Defendants' demand that Hampton "squash" the lawsuit lest his hours be cut demonstrates that Defendants understood Hampton's activity to be a sufficiently formal threat to their business. The anti-retaliation provision would be

seriously undermined if, as Defendants suggest, employers could openly violate the FLSA, only to escape liability for retaliation because they learned of an employee's complaint from a third party. The Complaint sufficiently alleges a protected activity.

(ii) NLRA preemption

Defendants assert that Count II is preempted by Sections 7 and 8 of the NLRA, which pertain to employees' right to organize and participate in collective bargaining. They claim that Plaintiffs' allegations about "organizing" a lawsuit and "collectively" asserting their right to overtime pay are vague allegations of activity covered by the NRLA. This is unpersuasive. The mere use of the words "collective" and "organize" do not necessarily trigger the NLRA. The Complaint is clear that the organizing being done concerned filing an FLSA lawsuit, and nothing more. The NLRA does not preempt Plaintiffs' FLSA retaliation claim.

(iii) Adverse employment action

Defendants argue that Count II should be dismissed for "failure to allege any facts that Defendants took any tangible adverse employment action against anyone other then Hampton." Essentially, Defendants claim that the workplace rule they instituted prohibiting their employees from working more than 40 hours per week when previously, the employees had routinely worked in excess of 40 hours per week, is not an adverse action. Defendants note that the rule applied equally to all

9

workers, and that employers have a legal right to establish and enforce rules prohibiting overtime hours.

Whether the limit on hours was "an objective, lawful workplace rule," as Defendants claim, is an issue not suitable for determination on a motion to dismiss. Rather, this Court examines only whether Plaintiffs have alleged an adverse employment action with respect to the elimination of overtime hours. To be adverse, any conduct falling short of termination, failure to hire, or demotion "'must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.'" *Blue v. Dunn Const. Co.*, 453 F. App'x 881, 884 (11th Cir. 2011) (quoting *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Plaintiffs allege that before the overtime complaint, they "routinely" worked in excess of 40 hours; the named Plaintiffs allege that they "frequently" worked 55 to 70 hours per week. A reduction in hours of 27 to 43 percent, and the corresponding decrease in earnings, are changes in compensation and terms of employment substantial enough to constitute an adverse employment action.

Defendants Motion to Dismiss Count II of the Complaint will be denied.

II.   Motion to Dismiss Defendant Maxwell

Defendant Maxwell also moves to dismiss on the basis that it was not Plaintiffs' employer.  Specifically, Maxwell asserts that Plaintiffs have not adequately pleaded that it is a "joint employer" with Ironstar.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  In determining "employer" status under the FLSA, courts look to the economic realities of the circumstances rather than technical common law concepts of agency.  *Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961).  "In determining whether an employer is a joint employer under the FLSA, courts within the Eighth Circuit consider the totality of the circumstances.   The analysis typically starts with a review of four factors: (1) whether the alleged employer had the power to hire and fire the plaintiff; (2) whether the alleged employer supervised and controlled plaintiff's work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained plaintiff's employment records."  *Childress v. Ozark Delivery of Missouri L.L.C.*, 95 F. Supp. 3d 1130, 1139 (W.D. Mo. 2015).

Defendants argue that Plaintiffs failed to plead specific facts with respect to the four joint employer factors and have therefore failed to state a claim against Maxwell.  The Court disagrees.  Maxwell's assertion that it never employed

Plaintiffs despite the Complaint's allegations otherwise, is a factual assertion extraneous to the Complaint not reviewable on a Rule 12(b)(6) motion. Moreover, the definition of "employer" under the FLSA is notably broad, and Maxwell's employer status is plausible based on the facts alleged in the Complaint, such as the Defendants' shared facilities, shared ownership and management, and both companies' use of welders to manufacture their products.

Whether Maxwell and Ironstar are "joint employers" is a matter appropriate for consideration on a motion for summary judgment, but not on a motion to dismiss. Maxwell's Motion to Dismiss will be denied.

## Conclusion

For the foregoing reasons, Defendants' Joint Motion to Dismiss Count II will be denied. Defendant Maxwell's Motion to Dismiss will also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion to Dismiss Count II [Doc. No. 15] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Maxwell Trailers and Pick-up Accessories, Inc.'s Motion to Dismiss is **DENIED**.

Dated this 9th day of August, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE